Nov. Term,
1855.

PURSLEY *v.* MORRISON and Another.

PURSLEY
v.
MORRISON.

A judgment will not be reversed because the Court gave an erroneous instruction, if the instruction was harmless.

When it is sought to charge one for the act of a special and not a general agent, it must be shown that the act done was within the scope of the agency.

If the agent, after his authority has been revoked, still continues to act within the scope of the agency, and it is sought to charge the principal for his acts, the burden of proof is upon the principal to show that the agency was terminated before the acts were done.

If one permit another to hold himself out to the world as his agent, he thereby adopts his acts, and will be bound to a person who gives credit to him as such agent.

Complaint against *A.* and *B.* upon a note. Answer, denying the allegations of the complaint. The execution of the note was denied under oath by *B.* only. *Held*, that as to *A.*, its execution was admitted.

*Wednesday,*
*December 26.*

APPEAL from the *Wayne* Court of Common Pleas.

GOOKINS, J.—*Pursley* sued *Morrison* and *Newby* upon a promissory note, in the following form:

"*January* 10, 1853. One day after date, for value received, we promise to *James Pursley*, or order, one hundred and seventy-five dollars. *Morrison, Newby, Robertson.*"

Also for an account, dated *January* 1, 1853, for one hundred and sixty-five bushels of corn, at 35 cents per bushel.

The first paragraph of the complaint charges the defendants on the note as surviving partners of *Robertson*, who is alleged to be dead. The second charges them for the corn. The third alleges that the defendants made the note by *Robertson* as their agent, who, it is alleged, signed his name to it as a principal by mistake, when he should have signed as agent merely. The fourth is like the second.

The answer denied generally the allegations of the complaint, and the execution of the note was denied under oath by the defendant *Morrison*.

Jury trial. Verdict for the defendants. Motion for a new trial overruled and judgment. The record contains the evidence.

It appeared in evidence that from the spring of 1848 to

*March*, 1851, the defendants, who resided at *Cambridge City*, in *Wayne* county, had a store of goods at *Maxwell*, in *Randolph* county, some twenty-five miles distant; that *Robertson* superintended the business for them; was in the habit of buying stock, such as cattle, hogs and sheep, for them, sometimes for cash and sometimes on credit. In *March*, 1851, *Robertson* bought the establishment from the defendants; which fact was known to the plaintiff; and continued business until *December* of that year, when he sold out to some one else.   There was evidence tending to prove that he bought and sold stock for them, until the spring of 1853; that while acting as their agent, before his purchase from them, he signed notes in their names for stock and for borrowed money, which they paid; that he continued to trade in stock until his death in *December*, 1853, and was in the habit of using the defendants' names until that time; that one of the defendants was at *Maxwell* occasionally on their business, until *Robertson's* death; that some of the hogs which the defendants got were taken to the plaintiff's by *Robertson's* directions, where they were fed a hundred and sixty-five bushels of corn, worth 35 cents per bushel.   This was in *January*, 1853.   A witness who had transacted business for the defendants at *Maxwell*, and had paid notes for them signed by *Robertson*, testified that he never heard any objection from the defendants to *Robertson's* authority to act for them until the time of trial.   There was also evidence tending to show that *Robertson* purchased the stock on his own account, and sold to the defendants, they advancing him money to enable him to make the purchases.

The Court of Common Pleas gave the jury the following instruction, to which the plaintiff excepted, to-wit: If the note was given for borrowed money, or if the evidence does not show it to have been given for stock, or is silent as to what it was given for, the plaintiff can not recover.

We do not think the plaintiff can complain of this instruction.   There was no evidence tending to show that the note was given for borrowed money.   The evidence

being all upon the record, we are enabled to see that there was nothing to which the first branch of the instruction could apply, and, consequently, whether right or wrong, the giving of it was not error, for the reason that it could do no harm. As to the second and third branches of the instruction, there is no evidence that the defendants and *Robertson* were at any time partners; consequently, if the latter had any authority to use their names, it was as their agent. The plaintiff knew of the change of the business in *March*, 1851, when his agency in reference to the goods terminated. Previous to that time, he had used their names generally, but subsequent to it there is no evidence tending to show that he used it, except in the purchase of stock, and the jury were authorized, under the second branch of the instruction, if it was given for that purpose, to find for the plaintiff. If there was no evidence for what it was given, the third branch of the instruction was manifestly correct. Where parties are sought to be charged for the act of a special, and not a general agent, it must be shown that the act was done within the scope of the agency.

The following instruction asked by the plaintiff, was refused: If the plaintiff has shown *Robertson* to have been the agent of the defendants, signing their names to notes a few years before the note sued on was given, and he continued to transact business for them until after the note sued on was given, if there was an end put to the agency it was for them to show it, and if they have failed to show the determination of it, the jury should find its continuance.

This instruction, we think, ought to have been given. The proposition, stated in different language, is, that if an agent continues to act within the scope of his agency, the burden of proof is upon the principal to show that the agency was terminated before the act complained of was done. We do not pretend to intimate what the proof establishes in this case. There was proof *tending* to show that he acted as the agent of the defendants, with their knowledge, until his death. By permitting another to hold

himself out to the world as his agent, the principal adopts his acts, and will be bound to the person who gives credit thereafter to the other in the capacity of his agent. : 2 Kent's Comm. 614. *McIntyre*, a witness, testified that it was a common practice for *Robertson* to give the notes of *Morrison* and *Newby* up to the time of his death. Their relations to *Robertson* were such that they may or may not have known it. That question was for the jury. For the error in refusing this instruction, the judgment must be reversed.

We think the judgment erroneous on another ground. The denial of the execution of the note was sworn to by *Morrison* only. It stood admitted as to *Newby*. *Taylor* v. *Gay*, 6 Blackf. 150.—2 R. S., p. 44, s. 80.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. B. Julian* and *W. A. Peelle*, for the appellant.

*J. Rariden*, for the appellees.