## The Baltimore and Ohio Railroad Company v. McWhinney and Another.

RAILROAD.—*Freight.*—*Demurrer.*—*Parties.*—In an action to recover from a railroad company the value of flour delivered to a combination of railroad companies, which divided freights *pro rata* among themselves, according to the length of each road, of which combination the railroad company sued was a member, and received the flour when it reached the line of its road, and transported the same to its destination, and refused to deliver it on demand to the plaintiff;

*Held,* that a demurrer to the complaint for want of sufficient facts did not present the question whether the other railroad companies united with it in the receipt and transportation of the flour and freight generally, were partners and proper parties with it as defendants to the action.

SAME.—*Bill of Lading.*—*Loss.*—*Value.*—The bill of lading stipulated that "in the event of the loss of any property," etc., "the value or cost of the same at the point and time of the shipment is to govern," and that the company in such case was to have the benefit of any insurance on the property lost.

*Held,* that the delivery of the flour at the point of destination to a wrong person, was not a loss within the intent of the bill of lading, and the proof of value was not therefore limited to the point of shipment.

DEPOSITION.—*Motion to Suppress.*—When evidence may be introduced on the trial, which may make the answers to certain interrogatories in a deposition admissible, it is proper that a motion to suppress should not be decided, until on the trial the court is informed whether or not such evidence will be offered.

TRIAL.—*Open and Close.*—Where the plaintiff, under the issues, has anything to prove in the first instance, in order to entitle him to recover; or where he is required to prove his damages in cases where the damages cannot be ascertained by mere computation, he is entitled to open and close.

EVIDENCE.—*Proof of Writing.*—Where an agency is sought to be established, by means of a letter purporting to be written by a party to the action, the genuineness of the letter must be first shown.

APPEAL from the Wayne Common Pleas.

WORDEN, C. J.—Action by appellees against appellant. Complaint in two paragraphs.

The first alleges, in substance, that the plaintiffs were partners doing business under the firm name and style of James McWhinney & Company; that on or about the 7th of June, 1864, the defendant was a corporation, owning and operating a line of railroad extending from a point on the

Ohio river, opposite the town of Bellaire, Ohio, to the city of Washington, D. C., and was engaged as a common carrier in transporting goods over said road; that at said town of Bellaire said railroad connected with a railroad owned and operated by the Central Ohio Railroad Company, extending from said town to Columbus, Ohio, where it connected with certain other railroads owned and operated by certain railroad companies which had been united under the name of the Great Central Railway line, extending from Columbus, Ohio, to Indianapolis, Indiana; that an arrangement had been made between said defendant and said other railroad companies, whereby it was agreed that all goods received at any point on either of said roads for shipment to any point on either of the others should be transported by them respectively, the freight received therefor to be divided among said companies in proportion to the distance of transportation over each road; that on the day aforesaid the plaintiffs delivered to the agent of the companies composing the said Great Central Railway line, at their station at Richmond, Indiana, four hundred barrels of flour, to be transported to the city of Washington, D. C., there to be delivered to the plaintiffs by their firm name aforesaid, in care of Seth English, Washington, D. C., and the said Great Central Railway line, by their acting agent, then and there executed and delivered to the plaintiffs a bill of lading therefor, a copy of which is filed and made a part of the complaint; that said great Central Railway line did transport the flour over its road to the terminus thereof, Columbus, Ohio, and there delivered the same to the Central Ohio Railroad Company, who transported the same over its road to the terminus thereof, at Bellaire, and there delivered the same to the defendant, who then and there undertook to transport the same over her road according to said arrangement, and deliver the same to the plaintiffs at Washington, D. C.; that defendant did transport the flour to Washington city, and delivered one hundred barrels thereof to the plaintiffs, but did not deliver the residue thereof, viz., three hundred barrels, to the plaintiffs

or to any person authorized by them to receive it; that the plaintiffs demanded the same, and were then and there willing to pay freight, etc.; but the defendant, instead of delivering the flour to the plaintiffs, wrongfully delivered the same to some other person or persons not authorized by the plaintiffs to receive it, whereby the same was lost to the plaintiffs, to their damage of five thousand five hundred dollars.

The bill of lading set out contains the following stipulation: "In the event of the loss of any property for which the carriers may be responsible under the bill of lading, the value or cost of the same at the point and time of shipment is to govern the settlement of the same; and in case of loss or damage of any of the goods named in this bill of lading, for which this company may be liable, it is agreed and understood that they may have the benefit of any insurance effected by or on account of the owner of said goods."

The second paragraph alleges that on and before the 7th of June, 1864, the defendant owned and operated a line of railroad extending from a point on the Ohio river, opposite the town of Bellaire, Ohio, to the city of Washington, D. C., and was then and there engaged as a common carrier in transporting goods and merchandise over said road; that on or about the day aforesaid, the plaintiffs, by and through the agency of the Central Ohio Railroad Company, delivered to defendant at Bellaire, Ohio, three hundred barrels of flour for shipment to Washington city, and the defendant then and there received and undertook to transport the same over said road, and to deliver the same at the freight station in Washington city to the plaintiffs or to their order; that the defendant did transport the flour to Washington City, but did not deliver it to the plaintiffs or their order, although the plaintiffs, within a reasonable time, demanded the same at the said freight station, and were then and there ready and willing to pay the freight, etc., but the defendant, instead of delivering the flour to the plaintiffs, wrongfully delivered the same to some person or persons not authorized by plaintiffs

to receive it, whereby the same became lost to the plaintiffs, to their damage, etc.

The defendant answered in four paragraphs.   A demurrer was sustained to the first and second, and, as they are not claimed to have been good, they need not be further noticed.

The substance of the third paragraph of the answer is that the defendant delivered the flour to one James Gray, the authorized agent of the plaintiffs at Washington city, who had authority from the plaintiffs to receive the same.   The fourth paragraph, pleaded only to the first paragraph of the complaint, sets up a delivery of the flour to James Gray, the authorized agent of the plaintiffs to receive the same, substantially as alleged ·in the third paragraph.   In the fourth paragraph some other matters of an affirmative character are alleged, but as no question arises on them, they need not be further stated.   Reply in denial.

The cause was tried by a jury, who returned a verdict for the plaintiffs for the sum of four thousand and sixty-two dollars, on which judgment was rendered, a motion for a new trial on behalf of the defendant having been overruled.

Numerous errors are assigned, and we proceed to examine such as are relied upon in the brief of counsel for the appellant.

The point is made that the complaint is bad.   It is claimed that the different railroad companies, upon the facts ·as alleged in the first paragraph of the complaint, are partners; and we suppose it is inferred from that, that the suit cannot be maintained without making them all defendants.

We shall not determine whether the facts alleged in the first paragraph would constitute the several railroad companies entering into the alleged arrangement partners or not. The ·question is not legitimately in the record.   The facts stated in each paragraph of the complaint constitute a good cause of action against the defendant; and if the facts disclosed in the complaint show that other railroad companies are jointly liable with the defendant as partners or otherwise, the objection of their non-joinder should have been taken by

demurrer assigning that especially as the cause; and that not being done, the objection was waived. 2 G. &. H. 77, secs. 50, 54.

It is claimed that the demurrer to the first and second paragraphs of the answer reaches back to the complaint. We think it does. That demurrer was for the want of sufficient facts, etc., and would reach the same defect in the complaint. A demurrer direct to the complaint for the want of sufficient facts, etc., would not reach the defect of non-joinder of a party defendant, there being a good cause of action stated against the party sued; and such demurrer would have to be overruled.

We proceed to other questions in the cause. The defendant moved to suppress certain questions and answers in the depositions of witnesses, taken by the plaintiffs, but the motion was overruled and exception taken. The object of the evidence sought to be suppressed was to establish the value of the flour at the city of Washington, at the time it should have been delivered. The appellant claims that under the bill of lading the rule of damages is established as the value of the flour at the time and place of shipment; and hence that evidence of the value at Washington was irrelevant and incompetent. Granting the premises, the conclusion would seem to follow. But can the premises be conceded? The bill of lading stipulates that, " in the event of the loss of any property," etc., "the value or cost of the same at the point and time of shipment is to govern," etc. But the flour was not lost in the sense in which that term is used in the bill of lading, if, indeed, it was in any sense. By the pleadings in the cause the point in issue was brought within a very narrow compass. The facts alleged in the complaint were admitted because not denied, save, perhaps, so far as they were inconsistent with the special matter set up in the answer. The answer alleges a delivery of the flour to James Gray, the agent of the plaintiffs authorized to receive the same. This is denied by the plaintiffs. Within this issue no question could arise, save that of the delivery of the flour to Gray and

the authority of Gray to receive it. No loss of the property in the sense of a loss of the thing in specie, or a loss of the substance or matter thereof, as by the destruction thereof by the elements or other casualty, could have been given in evidence under the issues joined; nor could any loss whatever, by which the defendant was deprived of the property and thereby rendered unable to deliver it to the plaintiffs. If the defendant did not deliver the property to Gray, as is .alleged, then there was no loss of it whatever; and if she did deliver it to Gray, and if Gray had no authority to receive it, then instead of there being a loss of the property there was a conversion of it by the defendant. Without undertaking to determine what kind of a loss would be embraced in the terms of the bill of lading, we think it very clear that a delivery of the goods by the defendant to a person not entitled to receive them is not a loss of the goods within the spirit and meaning of the contract. The context also supports this view, for it is stipulated that in the event of a loss or damage of the goods for which the company might be liable, she should have the benefit of any insurance effected on them.

We are of opinion that on the issues being found for the plaintiffs, the measure of their damages was the value of the property at Washington at the time it should have been delivered, with interest thereon from that time, and hence that the ruling was right.

On the trial, the court rejected certain questions and answers in depositions taken on behalf of the defendant. These questions and answers had relation to a letter claimed to have been written by McWhinney to James L. Gray. These questions and answers seem to have been properly excluded, for the reason that there was no evidence of the writing of the supposed letter by McWhinney, by proof of his hand-writing or otherwise. A motion had been made before the- commencement of the trial to suppress this portion of the depositions, but the motion was not then determined. The plaintiffs having gone through with their evidence, and the defendant being about to read her depositions, the court

inquired of counsel for the defendant, whether he had any further evidence to offer in relation to the letter named, to which the counsel answered that he had none save what was contained in the depositions. These questions and answers were then excluded. The course pursued seems to have been entirely correct. It was not proper to suppress the evidence in the first instance, because on the trial the lacking link in the chain of evidence, viz., proof that the letter was written by McWhinney, by proof of his signature or otherwise, might have been supplied; and until the counsel for the defendant announced that he had no further evidence on the point except what was contained in the depositions, the court could not know that it would not be supplied. The objection to the testimony was not disclosed on the face of the depositions, but arose from a failure of the defendant to supply the omitted link. The case stood as if the letter had been offered in evidence without proof of its having been written by McWhinney or by his direction.

The objection to the admissibility of the evidence could be taken on the trial. 2 G. & H. 178, sec. 266.

The court, on motion of the plaintiffs, suppressed a number of questions and answers in the depositions taken by the defendant, and in reference to some of them we think the court erred. The following questions and answers were, but we think should not have been, suppressed. George S. Koontz having testified that the flour in question was delivered to James L. Gray, he was asked and answered as follows:

Fifth question. "Who was the said James L. Gray, and why was the said flour delivered to him when it was consigned to James McWhinney & Co.?" Answer. "James L. Gray was the agent of James McWhinney & Co. for the sale of flour having the Richmond brand. Several large lots of this flour consigned to James McWhinney & Co. had been before this delivered to the said Gray as their agent, and the lot in question was delivered to him as agent in the same way."

Fourteenth question. "Please state whether or not any

flour manifested to James McWhinney & Co., consignees, was delivered to any one else than James L. Gray as agent, and state whether you have any recollection of any lot of McWhinney & Co.'s flour being manifested in any other manner." Answer. "All flour that was manifested to James McWhinney & Co. was delivered to James L. Gray, as agent, as was done in reference to the particular lot in question. I recollect that there was some of McWhinney's flour delivered to S. English, but that was differently manifested."

Deposition of C. Jackson Ringrose.

Sixth question. "Who, in fact, did make sales of flour consigned to James McWhinney & Co., from Richmond, Indiana, in the city of Washington?" Answer. "James L. Gray made sales, and I believe his brother also."

Deposition of Richard W. Gray.

Fourth question. "Do you know whether they (the plaintiffs) had an agent in the city of Washington for the sale of flour? and if so, who was that agent?" Answer. "They had; my brother, James L. Gray."

Fifth question. "Do you know whether your brother received flour from the said firm? and if yea, whether the same was disposed of, and by whom?" Answer. "I know that my brother received several lots and disposed of them for James McWhinney & Co."

Sixth question. "Do you know who made the sales of said lots?" Answer. "I do; my brother, J. L. Gray."

Fifteenth question. "In your answer to a previous interrogatory, you have spoken of your brother as the agent of the plaintiffs. How, of your own knowledge, do you know that he was such agent?" Answer. "All the flour of that brand received in Washington was sold by my brother for a space of some four months. I was in and out of the office when Mr. McWhinney and my brother were making arrangements about the agency."

Sixteenth question. "How many lots of flour were received from the said McWhinney & Co. by your brother prior to the lot in controversy?" Answer. "Three lots

prior to the lot in controversy. First lot was two hundred barrels; second lot was three hundred barrels; third lot was twenty-four or twenty-six hundred barrels."

We are of opinion that the foregoing evidence was competent and relevant, and that it had some tendency to establish the authority of Gray to receive the flour in question as the agent of the plaintiffs; and, therefore, that the court erred in suppressing it. But it is claimed by the appellees that if the court erred in this respect, the error was harmless, inasmuch as the company did not, in delivering the flour to Gray, rely upon any previous agency or authority in him, to receive flour for the plaintiffs, but solely on the supposed letter from McWhinney to Gray. There is much plausibility in this view, but in looking through the testimony we cannot say from that that such was the fact.

Another error assigned relates to the ruling of the court in giving the plaintiffs the opening and close of the case. The decisions of this court have been fluctuating on this point. It may, perhaps, now be regarded as settled that where the plaintiff, under the issues, has anything to prove in the first instance, in order to entitle him to recover, or where he is required to prove his damages in cases where the damages cannot be ascertained by mere computation, he is entitled to open and close. *Fetters* v. *The Muncie National Bank*, 34 Ind. 25.

Here the plaintiffs were required to prove their damages, in order to recover beyond such as were merely nominal, and consequently they were entitled to open and close.

The defendant asked the following instructions, which were refused:

2d. "If the defendant has shown James L. Gray to have been the agent of the plaintiffs, receiving for them different lots of flour during a period of four months immediately prior to the lot in question, consigned to James McWhinney & Co., from said defendant, and continued to transact business for them in receiving from defendant lots of flour so consigned, up to the time of the receipt of the lot in ques-

tion, and no question was made or notice given to the contrary, if there was an end put to the agency it was for the plaintiffs to show it; and if they have failed to show the determination of it, the jury should find that said agency continued."

3d. "If the jury believe from the evidence, that James L. Gray had been the agent of the plaintiffs in Washington city, D. C., to receive flour consigned to James McWhinney & Co., shortly before the time of the delivery of the lot in controversy, transported on the defendant's road, and had received several large lots from defendant before the lot in controversy, the defendant was justified in delivering said last lot to said Gray, unless plaintiffs have proven that prior to said delivery defendant was notified of the termination of said agency." 

These charges seem to have been correct in the abstract; *Pursley* v. *Morrison*, 7 Ind. 356; and we can hardly say that they were totally inapplicable to the case made by the evidence. At least, it may be said that if the portion of the depositions which was erroneously suppressed had gone to the jury, the charges would have been applicable, and should have been given.

The judgment below is reversed, with costs, and the cause remanded for a new trial.

*W. A. Bickle*, for appellant.

*J. P. Siddall* and *C. H. Burchenal*, for appellees.