## GIMBEL ET AL. *v.* HUFFORD ET AL.

EVIDENCE.—*Written Instrument.—Copy and Original.*—Where an original bill of lading is in the possession and under the control of the plaintiff, it is error to admit in evidence, on behalf of the plaintiff, a copy, or if admitted and it afterward appears that the original is in the hands of the plaintiff, the copy should be withdrawn.

SAME.—*Deposition.*—It is proper for a witness, whose deposition is taken, to identify a written instrument, and attach a copy of it to the deposition, and such part of the deposition should not be suppressed, for the absence of the original may be accounted for, and the copy be rendered admissible.

INSTRUCTION.—*Evidence of Trivial Statements.*—Where there is no evidence of declarations lightly made in a trivial way, it is error to instruct a jury that declarations lightly made in a trivial way, by a party, without his attention being called to the subject-matter, form a very weak class of testimony.

From the Knox Common Pleas.

*T. R. Cobb* and *N. F. Malott*, for appellants.

*J. C. Denny, G. G. Reily*, and *W. C. Johnson*, for appellees.

BUSKIRK, J.—This was an action by the appellees against appellants, to recover the possession of six barrels of whiskey.

There was issue, trial by jury, verdict for appellees, and, over a motion for a new trial, judgment on the verdict.

The error assigned is for overruling the motion for a new trial.

The whiskey in controversy was made and originally owned by the appellees, who carried on the distilling business at Uniontown, Kentucky, situate on the Ohio river, some sixty miles below Evansville, Indiana. On the 20th day of January, 1870, the whiskey was shipped from Uniontown through Richeson & Hatfield, forwarding merchants, to Humphrey, Lewis & Co., at Evansville, to be forwarded by rail to Vincennes. The barrels were marked "M. T." but no bill of lading accompanied the whiskey, or any writing, indicating who was the consignee, other than said initials. Humphrey, Lewis & Co. received the whiskey January 21st, 1870, and wrote the same day to Richeson & Hatfield to learn the name of the consignee. The latter answered the same day, that the whiskey was shipped by them "per

account Capt. Jeffries or Hufford & Lytle ; M. Thomas, Vincennes, Ind., by rail." On January 22d, 1870, the whiskey reached the railroad depot of Vincennes, with nothing accompanying, excepting said initials, to indicate the consignee. The depot agent, Agnon, wrote the same day to Humphrey, Lewis & Co., to learn the name of the consignee, and in reply was directed to deliver it to M. Thomas as owner. On the 25th of January, 1870, a stranger called on appellants at their store in Vincennes. He claimed to be "M. Thomas" and agent for the appellees, and proposed to sell them six barrels of whiskey then lying in the railroad depot. He exhibited a sample of the whiskey and bill of lading for same, issued to Richeson & Hatfield, as consignees. Appellants were wholesale liquor dealers at the time, and agreed to take the whiskey at one dollar per gallon, if it agreed with the sample. The stranger then had a drayman to bring the whiskey from depot to appellants' store and there consummated the sale, receiving one dollar per gallon, and gave appellants a bill of sale receipted by him as agent for appellees. There was no person living or doing business in Vincennes on or before January 25th, 1870, by the name of M. Thomas. The person claiming to be M. Thomas disappeared from Vincennes, after making sale of said whiskey, and has not been heard of since. It is very obvious that the appellants at the time of the sale believed that the person who represented himself to be M. Thomas was the person he represented himself to be, and had no knowledge then of Capt. Jeffries, or of his having any thing to do with the whiskey. After the sale and before the bringing of the suit, the appellees demanded of the appellants the whiskey, who refused to deliver the same.

On the trial, the appellees claimed and submitted evidence tending to prove that one Capt. Jeffries, who had been stopping a few weeks at Uniontown, showed them a letter purporting to be from M. Thomas, a wholesale liquor dealer at Vincennes, Indiana, inquiring where he could buy six bar-

rels of copper distilled whiskey; that Jeffries represented Thomas to be responsible; that appellees, wanting to start a trade in Vincennes, shipped the whiskey in suit to Vincennes, marked " M. T.;" that Jeffries followed the whiskey to Vincennes, and claiming to be M. Thomas, sold the whiskey to appellants; and that the sale was without appellees' authority and made under circumstances sufficient to put appellants upon inquiry as to Jeffries' right to sell.

The appellants, on the other hand, claimed on the trial that the proof would fail to show that it was Jeffries who sold the whiskey to them; that the proof would fail to show that the person who sold them the whiskey was not M. Thomas; that the proof would fail to show any bad faith or want of caution or prudence on their part; that the appellees had previously sold and delivered the whiskey to Jeffries, and that they had purchased in good faith and for value; that if they failed to prove an actual sale to Jeffries, the appellees were estopped from asserting any claim to the whiskey, because they had intrusted the party selling to them, whether Jeffries, Thomas, or some other person, with the bill of lading for the whiskey, and upon the faith of it and the party's possession of the whiskey, the appellants had bought the whiskey in good faith and without notice of any fraud on the part of the person selling; that as the appellees had enabled the person selling to them to practise a fraud and deception upon innocent persons, they should suffer the loss, rather than the appellants, who had acted in good faith and with reasonable caution and prudence.

Having thus given the material facts in this unusual and peculiar case, as shown by the record, we proceed to the examination of the errors complained of.

On the trial of the cause, the appellees offered to read in evidence a copy of a bill of lading and the deposition of Hatfield in connection therewith. The appellants objected, because no legal excuse had been shown for failing to produce the original. The depositions of the appellees had already been read, to the effect that they had shipped the

whiskey to M. Thomas. The court overruled the objection, and the matter objected to was read over appellants' exception. The appellee Lytle afterward testified on the trial that he had then in his possession at Uniontown, Kentucky, the original bill of lading, shown by copy in Hatfield's deposition above mentioned. The appellants thereupon moved the court to exclude from the consideration of the jury such copy. The court overruled the motion, and the appellants again excepted. Both these rulings were assigned as reasons for a new trial.

The evidence was material. It was important to the appellees as tending to prove that the shipment was in fact made by them to M. Thomas, and that Jeffries had no right to interfere with the whiskey. The evidence, in the light of other evidence, was material and must have had influence with the jury. The copy of the bill of lading admitted over objection of appellants shows a shipment by the steamer "Quickstep," and has the words in it "To be forwarded to M. Thomas, Vincennes, Ind., by rail, per account Hufford & Lytle." The copy of bill of lading furnished by Richeson & Hatfield to Humphrey, Lewis & Co., the next day after the shipment, shows a shipment by the steamer Fayette, omits the name of M. Thomas and Hufford & Lytle, and simply has the words, "To be forwarded by rail." Kerney swore the whiskey was received from the steamer Fayette. Hatfield in his first deposition says that Jeffries had nothing to do with the shipment of the whiskey. Richeson & Hatfield's letter, written January 21st, says the whiskey was shipped per account of Jeffries or Hufford & Lytle. Hatfield's second deposition shows that Jeffries was present and directing the shipment.

Counsel for appellees insist that the copy was properly admitted, and refer us to the case of *Thom* v. *Wilson's Ex'r*, 27 Ind. 370.

In that case the court say: "It was also objected that the contract itself was not produced, but only a copy. The appellees requested the witness to file the original, but as

the paper was the property of the witness, and he was beyond the jurisdiction of the court, the copy furnished and made a part of the deposition was sufficient."

It appears from the record in the above case that the witness, whose deposition was taken, was not a party to the action ; that he resided beyond the jurisdiction of the court; that he was the owner and in possession of the original paper, and upon request refused to attach the same to his deposition.

In the present case, it is not shown by the deposition of Hatfield, that he had in his possession the original bill of lading, or that he was asked to attach the original to his deposition. He was asked to attach a copy, which he says he did.

The ruling in the above case was based upon the ground that the witness was the owner of the original paper and refused to make it a part of his deposition, and that being beyond the jurisdiction of the court, there was no way of compelling him to produce in court the original paper.

In the present case, it was shown upon the trial that the original bill of lading was in the possession and under the control of the plaintiffs, who had come into this State, and were seeking to assert in our courts their rights, which were mainly based upon the terms and legal effect of the bill of lading. The plaintiffs, being suitors in the courts of this State, were bound by the same rules as though they were actual residents of this State. They, in their character of suitors, were entitled to the same rights and remedies as citizens of the State. It was proper for Mr. Hatfield to identify and attach to his deposition a copy of the original bill of lading, and it would have been improper for the court to have suppressed that portion of his deposition, because the plaintiffs might, upon the trial, have accounted for the loss or absence of the original, and thus rendered the copy admissible in evidence. *The B. & O. R. R. Co.* v. *McWhinney*, 36 Ind. 436. The plaintiffs, however, offered to read in evi-

dence such copy, without in any manner accounting for the original, and the defendants objected upon the ground that no legal excuse was shown for not producing the original.

It is very plain and obvious that the court erred in admitting in evidence such copy; and it is equally as plain and obvious that when it appeared upon the trial that such original bill of lading was in the possession and under the control of the plaintiffs, the court should have withdrawn from the jury a copy of such bill.

Counsel for appellants complain of the giving and the refusal to give instructions. The court, of its own motion, gave eight instructions, to all of which exceptions were taken. The appellants asked the court to give eleven instructions, but the court refused to give any of them, to which proper exceptions were taken.

We will, in the first place, consider the action of the court in refusing to instruct as asked.

The first and second instructions asked were covered by the first instruction given by the court.

The third instruction asked contained a correct exposition of the law, and was not embraced in any which were given, and should have been given.

The fourth, fifth, sixth, seventh, eighth, and ninth instructions asked were substantially embraced in the second, third, fourth, fifth, and sixth instructions given.

The tenth instruction asked was in substance the same as the third instruction asked and refused, and there was no error in refusing it the second time.

The eleventh should have been given.

The seventh instruction given by the court is especially complained of by counsel for appellants. It is as follows: " Declarations lightly made in a trivial way by a party, without his attention being called to the subject-matter, form a very weak class of testimony. Declarations made by third parties, while not engaged in some of the business transactions out of which the suit grows, cannot be regarded as evidence in the case."

Counsel admit that the foregoing instruction contains a correct exposition of the law as abstract propositions, but contend that they are not applicable to the evidence in the cause. The only declarations of a party, to which the first branch of the above instruction could be applied, are those of Lytle as testified to by Kerney, who was a member of the firm of Humphrey, Lewis & Co., forwarding merchants of Evansville. He testified that Lytle, one of the plaintiffs, called on him about the 24th of January, 1870, and inquired of him about the whereabouts of the six barrels of whiskey. Kerney informed him that the whiskey had been shipped to Vincennes, with instructions to deliver it to M. Thomas, pursuant to the letter of Richeson & Hatfield. Lytle then stated that "Jeffries had bought the six barrels of whiskey from the plaintiffs, and given his note or draft for it; that Jeffries had got the whiskey and gone away with it; that he, Lytle, had concluded that Jeffries would not pay for the whiskey, and he wanted to get possession of it before Jeffries disposed of it."

The above declarations do not appear to have been "lightly made in a trivial way." They seem to have been deliberately made, while his attention was especially given to the recovery of the whiskey. After a careful examination of the evidence in the record, we have failed to find any to which the above instruction could be applicable. It was therefore calculated to mislead the jury.

Other questions are discussed by counsel, but as they are not likely to arise upon another trial, we shall not further notice them.

The judgment is reversed, with costs; and the cause is remanded, for a new trial in accordance with this opinion.