Gavin, J.
The appellee sued to recover damages caused by her wrongful expulsion from appellant’s train.
From her complaint, it appears that the Lake Erie and Western Railway Company owned a railroad from Indianapolis through Tipton and Kokomo to Michigan City; appellant owned a road from Kokomo to Logansport; by some arrangement between the roads, the terms of *642 which were unknown to appellee, the appellant ran her train over the L. E. & W. road from Kokomo to Indianapolis, with an agreement to carry passengers upon tickets issued by the L. E. & W. Co., the proceeds of which were divided between the two roads. Appellant’s train stopped at Tipton and Kokomo regularly to receive and discharge passengers. On the day mentioned in the complaint, appellee purchased from the L. E. & W. agent at Tipton a coupon ticket from Tipton to Kokomo’ and thence to Logansport.
This ticket was purchased just before the appellant’s train was due, and was purchased and sold for use on that train. With it she boarded the train and tendered it to the conductor for her passage, but it was refused, and she was ejected. There were various stipulations and conditions on the ticket, providing that under the contingencies named the ticket should be invalid, e. g., that it should not be good unless stamped, nor if checks were detached, etc.
While the ticket showed it was issued by the L. E. & W. Co., there was nothing to indicate that it was for use only on L. E. & W. trains. The coupon from Tipton to Kokomo read:
L. E. & W. P., C., C. & Sr. L.
Strealing Improved Coupon Ticket. Pat. May 28,1876.
“Issued by Lake Erie and Western Railroad.
TIPTON TO KOKOMO.

On Condition Named in Contract. One Passage.
NOT GOOD IE DETACHED.
801 L. E. & W. P., C., C. St. L ”
*643 Under the allegations of the complaint and the form of the ticket, the L. E. & W. Co. was in effect made the agent of the appellant for the issuing of tickets good on its trains over the L. E. & W. road. The appellant was under the same obligation to accept the ticket as rested upon the L. E. & W. Co., and under substantially the same obligation to accept as if it had itself issued the ticket.
In Schopman v. Boston, etc., R. R. Co., 9 Cush. 24, a passenger procured a ticket from one company (not the defendant) from SpringfieldthroughWorcester to Boston. From Worcester to Boston she rode over the defendant’s road in a train hauled by its engine and under its control. The defendant, however, claimed, as here, that there was no contract between it and the passenger. The court says: “It is, in our view, quite immaterial where she may have obtained this Boston and Worcester railroad ticket. If the defendants adopt this mode of furnishing their tickets to sell elsewhere, either at other railroad stations, or in connection with stages, or if they agree with another contiguous railroad company, that a ticket be issued which is to entitle the purchaser to pass on both roads, and which, upon being shown to the conductor of the Boston and Worcester road, is to have all the benefits of ordinary tickets, and to be received by him as such ticket, it is, to all intents and purposes, the same thing to the traveler as a ticket purchased at the office of the Boston and Worcester railroad; and the rights of the passenger, and the liabilities of the company are the same as if the ticket had been purchased at the office of the Boston and Worcester railroad company, for the mere passage from Worcester to Boston.”
That the appellant was really a party to the contract of carriage under the allegations, see Foulkes v. Met. Dist. R. W. Co., 5 Com. P. Div., L. R., 157 (158).
*644 As to the various provisos and contingencies contained in the ticket, conceding without deciding that the appellee was in all respects bound bjr them, they were matters of defense to be set up by appellant.
We do not regard as material the failure to give the full name of the appellant in referring to it in the body of the complaint. Appellant is properly named as a defendant in the caption, and the first use of the incorrect name is in connection with the words, the “said defendant.” Taking the pleading altogether, it is clear that appellant is the company designated, and we are satisfied it states a good cause of action.
By its first paragraph of answer, appellant set up that its only right to run trains over the L. E. & W. road was by virtue of a contract which provided that the L. E. & W. Oo. should retain its local passenger business and appellant should not sell tickets on its trains for points between Indianapolis and Kokomo; that appellant maintained no ticket office nor ticket agent at Tipton; that there was no obligation resting upon it to carry passengers from Tipton to Kokomo on L. E. & W. tickets except at its own option; that appellant had nothing to do with the sale of the ticket in question, and did not in any manner authorize the sale of it or any of like import, but, on the contrary, had notified the L. E. & W. Co., through its general passenger agent, that such tickets would not be honored on appellant’s trains; that Tipton is not a station where appellant’s trains stopped regularly to receive and discharge passengers generally, but appellants stopped at the L. E. & W. depot at that point because there was a railroad crossing there, on account of which trains were compelled, by law, to stop. Appellant further expressly denied any arrangement with the L. E. & W. Co. to honor such tickets as that issued to appellee, it being a coupon ticket, extending beyond *645 Kokomo, but alleged that it was between said roads agreed that such tickets should not be so honored; that the ticket was not sold for passage on appellant’s train, but was issued by the L. E. & W. Co., which ran four trains daily between Tipton and Kokomo. A copy of the ticket was set out with the answer, and some further formal allegations were contained in it.
To this answer appellee replied that for five years prior to the occurrence in controversy appellant had, under its contracts, run its trains over the said L. E. & W. road, had used the same depot at Tipton for the accommodation of its patrons, where the same ticket agent sold tickets for the trains of appellant and the L. E. &W. Co.; that during such time appellant ran a solid train between Indianapolis and Logansport, and during said time solicited and received passengers upon its trains at Tipton and conveyed them on a continuous passage to Logansport; that as an inducement to those taking passage on appellant’s trains, to purchase tickets reading from Tipton to Logansport, said tickets being of the kind and character mentioned in the complaint and answer, appellant charged on the train an amount in excess of the ticket rate; that the only tickets sold for appellant’s passenger trains at said ticket office at Tipton during said time, reading from Tipton to Logansport, were of the kind and character mentioned in the complaint, and during all of said time this defendant adopted said tickets as its own and honored and received said tickets for passage upon its trains between said points; that if appellant had the option alleged in its answer it had for several years prior to the sale of said ticket to appellee, elected to exercise said option by soliciting passengers and receiving and honoring such tickets upon its trains, and invited the appellee and the traveling public to purchase said tickets; that on divers occasions prior to this *646 one, appellee had purchased from said ticket agent at Tipton tickets like the one mentioned in the complaint, and at all of said times appellant had received and honored the same for continuous passage from Tipton to Logansport; that appellee purchased her said ticket on the occasion complained of from said appellant’s agent for use on said appellant’s train, as said agent then knew, without any knowledge or notice, that the same would not be honored.
To this reply a demurrer was overruled, with an exception. In this ruling there was no error. The averments of the reply show that for several years the L. E. & W. Co. was authorized to issue tickets like the one in question for use on appellant’s road and that appellant was bound to accept and honor them, because whenever it authorized the issuance of such tickets for use on its road, it then became bound to honor them. Wheeler Law of Mod. Carriers, 286.
If, by its course of business for a series of years, appellant led the public to believe that the L. E. & W. Co. at Tipton was authorized by it to sell tickets of this character, to be used on its trains, and appellee, with knowledge of such custom and in reliance upon such agent’s authority, purchased this ticket, without notice of appellant’s withdrawal of its authority, the appellant would be bound by the agent’s act, even after the revocation of the authority. As to those dealing with the agent, in ignorance of the changed condition of affairs, the appellant is estopped to deny the agent’s authority. Ulrich v. McCormick, 66 Ind. 243; North Chicago, etc., Co. v. Hyland, 94 Ind. 448; Sweetser v. Odd Fellows’, etc., Assn., 117 Ind. 97; Story Agency, section 470, and notes; Baltimore, etc., R. R. Co. v. McWhinney, 36 Ind. 436.
The answer and reply taken together show that appel *647 lant had the right, under the contract, to carry appellee, and it would be manifestly unfair to permit appellant to invite appellee to enter its train to ride on such a ticket, and then eject her for doing just what it had solicited and invited her to do. These roads could not make a contract between themselves that such tickets should not be honored, and then invite and solicit the public to buy them, and after selling them for such purpose, say to the public they were not good. The plainest principles of fair dealing require that travelers should be advised of .any such a change in the rights of the parties.
"Whether a general notice, properly published, would be sufficient to excuse the want of personal notice, we need not determine, for no notice to the public is shown to have been given. Kansas, etc., R. W. Co. v. Kessler, 18 Kan. 523; Lane v. East Tenn., etc., R. R. Co., 5 Lea (Tenn.), 124; Wheeler Mod. Law of Carriers, 180.
The reply is not a departure from the complaint. It simply shows that appellant is estopped’ to assert certain facts set forth in its answer, even if they be true.
These pleadings, with general denials to all the affirmative pleadings, formed the issues which were tried by a jury, which rendered a verdict in favor of appellee.
Appellant’s motion for new trial was overruled with an exception.
An examination of the evidence discloses the following state of facts:
The L. E. & W. R. R. Co. owned the road. By contract in 1888 it leased to appellant’s predecessor, to whose rights appellant succeeded, the right to use jointly with said L. E. & W. Co. the railroad from Indianapolis to Kokomo, including sidings, switches, stations, etc., for the purpose of running through trains thereon. The contract provides: “All business originating upon the line between Indianapolis and Kokomo, including busi *648 ness from either of said points to the other, shall belong exclusively to the first party (The L. E. & W. Co.), but the second party shall have the right to honor upon its trains the passenger tickets of first party, between points at which trains of second party may be obliged to stop on account of railroad crossings, train orders, etc.” Provision is made for monthly settlements as to such tickets, and also as to cash fares received and for a division of the proceeds of such tickets and cash fares between the two- companies.'
Up to September 22, 1891, appellant received and honored local tickets issued by the L. E. & W. Co., including tickets similar to the one sold appellee. About September, 1891, correspondence between the companies was opened concerning the kind of tickets which the appellant would honor, some dispute having arisen in auditing the accounts.
This correspondence culminated in the issuance of an order by appellants to its ticket receivers as follows:
“Pittsburg, Pa., September 16, 1891.—Please instruct conductors that on and after September 22, 1891, only local tickets issued by the L. E. & W. Ry. reading between Indianapolis and Kokomo and intermediate points, and between Kokomo and Indianapolis and intermediate points, will he accepted on trains' of the P., C., C. & St. L. Ry. Co. running between Logansport and Indianapolis.
“In other words, tickets or coupons reading over the L. E. & W. Ry. from Indianapolis to points east or west of Tipton and north of Kokomo and vice versa, will be good on L. E. & W. trains only.”
A copy of this order was furnished to the general passenger agent of the L. E. & W. Co. and its receipt acknowledged by him. The position of the L. E. & W. Co. with regard to this order was entirely passive, recog *649 nizing that, so far as it was concerned, the appellant had the right under the original contract to say what tickets it would honor.
During all this time the L. E. & W. Co. was running its regular trains over its road. The ticket agent at Tip-ton was employed, paid and controlled exclusively by the L. E. & W. Co.
Appellant never had any ticket agent at Tipton, and never put any tickets on sale there, except in so far as tickets sold by the L. E. & W. Co. may be held to be its tickets.
At the Tipton depot was a railroad crossing and appellants stopped at the depot regularly, not only on account of the crossing, but to receive and discharge passengers. The L. E. & W. ticket agent opened his windows regularly for the sale of tickets before the arrival of the appellant’s trains, and sold coupon tickets for Logansport and other points on the appellant’s road, similar to that under consideration, to be used on appellant’s trains or on L. E. & W. trains, and they were used on both up to September 22. Such tickets were the only tickets on sale for Logansport via Kokomo. Tickets issued by the L. E. & W. Co. for Indianapolis and Kokomo, or intermediate points, without coupons, were honored by the appellants regularly and continuously up to and after the sale of appellee’s ticket. The general passenger agent of the L. E. & W. Co. evidently did not understand the order to apply to tickets of this character, and no directions were given by him to discontinue their sale for appellant’s trains and no notice given that they would not be honored thereon. The L. E. & W. ticket agent testified that he opened the office window' for the sale of tickets fifteen or twenty minutes before the appellant’s north-bound train was due, which was about 12:50 p. m.; that this was the first train due; that the next north *650 bound, train was an L. E. & W. train due about 3 o’clock; that he was selling tickets for appellant’s train; that no train was specified in the sale of appellee’s ticket; appellant’s train ran direct to Kokomo and Logansport; the first L. E. & W. train,-the one due at 3 o’clock, did not make connection at Kokomo for Logansport, the passengers on that train being compelled to wait. He further testified that he found this coupon form of ticket in the office when he took charge, thirteen months before, and continued to sell them up to the time he sold the two to Berryman for both L. E. & W. and appellant’s trains.
Appellee’s husband testified that shortly before the appellant’s north bound train was due he asked the agent for two tickets for Logansport for the Panhandle (appellant’s) train, and received the tickets in question, and paid for them; that when the train came in, his wife got on, and as it started he got on and sat down beside her. The conductor came along, he presented the tickets, the conductor refused to receive them as being contrary to his orders, and on his refusal to pay fare put himself and wife off at the next station, whence they walked back home; that prior to October 8, 1891, the day of this transaction, he had himself bought tickets for Logansport similar to these for use on the Panhandle trains, which were honored on such trains, and had also known of others doing likewise, but had never known of their being dishonored until on this occasion. Appellee’s husband who bought her ticket testified that at the time of such purchase he had no knowledge that it would not be honored.
One of appellant’s servants testified that he notified the husband before he boarded the train, that the ticket was not good_. This he denied.
Settlements between the companies were had from time to time, and appellant received its share, twenty- *651 ■five per cent, of the proceeds of tickets issued by the L. E. & W. Co., and taken up by its conductors."
Most of the facts, as we have given them, are conceded by counsel. Those which are not conceded are, in our opinion, established clearly and beyond dispute.
We are unable to construe the ticket, as claimed by appellant, to show upon its face that it was intended for use only on L. E. & W. trains. The absence of any limitation of that character, and the presence of appellant’s initials on the Kokomo coupon, the heading of which is “L. E. & W., P. C. C. & St. L.,” and the ending the same, “L. E. & W., P. C. C. & St. L.,” would indicate strongly, to a purchaser who knew that both L. E. & W. and P. C. C. & St. L. trains were run over this road, that the ticket was intended to be used on either company’s trains. Peterson v. Chicago, etc., R. W. Co., 45 N. W. Rep. 573.
From the circumstances and evidence recited, the conclusion inevitably follows that appellee’s ticket was purchased and sold for use on appellant’s train. It likewise follows that up to September 22, 1891, the L. E. & W. Co., and its agent at Tipton, were authorized to issue and sell tickets, such as appellee’s, for use on appellant’s train. It may also be conceded that the order of September 16, applies to and forbids the receiving of tickets such as appellee’s, thus revoking such authority, and leaving the L. E. & W. Co., on October 8, without any actual authority to sell such tickets for such use, although it was on that day authorized to sell certain kinds of tickets for use thereon.
It should be remembered in this connection that when an agent has been invested with certain powers and persons deal with him in reliance upon such authority, they are not bound by secret instructions given to the agent *652 and not known to the third persons. Lake Shore, etc., R. W. Co. v. Foster, 104 Ind. 293.
It is true there is not, in the evidence, any direct appointment of the L. E. & W. Co., as the agent of the appellant, eo nomine, for any purpose, yet the existence of the agency is abundantly proved by the acts and conduct and course of dealing of the parties from which it may be implied.
No express appointment of an agent is necessary to create that relation, at least so far as the rights of third persons are concerned. Although the officers persistently say there was no agency, yet the facts admitted are such as in legal contemplation constitute an agency, so far as third parties are concerned at least. Mechem Agency, sections 83, 84; Story Agency, section 54. Pursley v. Morrison, 7 Ind. 356, 1 Am. & Eng. Encyc. of Law, 340.
To recapitulate the result of the facts, it appears that the L. E. & W. Co. was, for several years and up to October 8, 1891, authorized to sell tickets for use on appellant's road. On September 22, 1891, this right was revoked as to tickets such as that purchased by appellee, but permitted to continue as to other kinds of tickets, but no public notice of such revocation was given. On October 8, 1891, appellee, having had knowledge of the previous agency and relying upon it, without knowledge of the revocation, purchased the ticket on which she sought to ride, and which was refused by appellant, and she herself required to leave the train.
Under such facts there could be,, upon the principles of law which we have announced, but one proper result of the trial and that must be a verdict for appellee.
When appellee boarded the train, with a ticket which entitled her to ride thereon, and tendered it to the appellant, it was bound to carry her, and it was wrongful to *653 require her to leave the train. Corsten v. Northern Pac. R. R. Co., 44 Minn. 454; Lake Erie, etc., R. W. Co. v. Fix, 88 Ind. 381.
We have thus presented the facts in detail, and the law as we adjudge it to be, and it is therefore unnecessary to take up, seriatim, the errors urged in the admission of evidence and as to instructions. The views of the law expressed, dispose of most of them against the claims of appellant.
The third and seventh charges given we must regard as incorrect, but this does not necessarily require nor justify a reversal. These instructions went to the question of appellant’s duty to receive appellee’s ticket. Since the verdict was unquestionably right in determining that such was the duty of appellant, there was no harmful error in the instructions. Elliott App. Proced., sections 642, 643; City of Lafayette v. Ashby, 8 Ind. App. 214.
While the damages appear, to us larger than should have been allowed by the jury or approved by the trial judge, when regarded as compensatory only, we do not feel free, under the rule established by many cases, to disturb the verdict on that ground.
The action is one sounding in tort, and the humiliation and mortification caused appellee, by reason of being publicly compelled to leave the train, are proper elements of damage. Louisville, etc., R. W. Co. v. Wolfe, 128 Ind. 347; Pennsylvania Co. v. Bray, 125 Ind. 229; Chicago, etc., R. R. Co. v. Holdbridge, 118 Ind. 281; Indianapolis, etc., R. W. Co. v. Howerton, 127 Ind. 236; Jeffersonville R. R. Co. v. Rogers, 38 Ind. 116; Lake Erie, etc., R. R. Co. v. Arnold, 8 Ind. App. 297.
There is no standard by which such damages can be accurately estimated or measured. The authority of the above cases, with many others of like import, compels us to refrain from reducing the amount of this verdict.
*654 Filed Feb. 24, 1894;
petition for a rehearing overruled Nov. 23, 1894.
In the action of the court in instructing the jury to find for the defendant, the L. E. & W. Co., there was no error of which the appellant can complain.
There was no issue joined between these two defendants. If they have any rights, the one against the other, that is for them to settle.
We have not found, either in the pleadings or in the' ruling on the motion for new trial, any error which would justify a reversal.
Judgment affirmed.