No. 16,324.

## BELL ET AL. *v.* CORBIN ET AL.

MORTGAGE.—*School Fund.— Sale.— Surplus.— Right to.— Grantee.— Theory.—Recovery.*—A. was the assignee of lands subject to a school fund mortgage. The county auditor sold the lands to satisfy the mortgage, and A. and wife executed power of attorney to B. to recover the land from such sale and to sell the same, B. executing simultaneously with the power of attorney his contract of purchase of the land, agreeing to pay A. $500 when it should be realized out of the land, such claim of A. for the $500 to be a lien on the land. While such power of attorney was still in force, B. recovered the land from the tax sale and sold the same to C., who purchased prior to the sale of the land by the auditor and the accruing of the surplus, with knowledge of the contract between A. and B.

*Held,* that C. was the assignee of A., and entitled to the surplus proceeds of the lands after the school fund mortgage was satisfied.

*Held,* also, that A. had a valid claim against C. for the $500 which B. agreed to pay, C. having purchased with knowledge of such fact, and that it was unpaid; but A. having brought suit for the surplus, he must recover upon that theory, if at all, that being the theory adopted in the court below.

BURDEN OF PROOF.—*Power of Attorney.—Presumption.*—Where a complaint alleges that a power of attorney has been revoked by mutual agreement, the burden is on the plaintiff to prove such fact, and when there is no finding as to such fact, the presumption is that the court found against the party having the onus.

PLEADING.—*Answer.—Parties.—Substitution of.—Agent.—Husband and Wife.*—Where, during the progress of an action, it is discovered that the husband, who is a party defendant to an action, was acting merely as agent for the wife, she may be substituted as defendant in his place, and answers filed by him will stand as the wife's answers without any change of names or refiling.

COSTS.—*Party Defendant.—General Denial.—No Interest in Subject-Matter.*—If a party defendant has an interest in the subject-matter in controversy at the time the suit is instituted, and subsequent thereto transfers such interest to another, and subsequent to the transfer answers in general denial, under such condition of the record the court can not do otherwise than render judgment against such defendant for costs.

PARTIES.—*Defendant.—Default.—New Trial.—Appeal.*—Where a party defendant was duly defaulted and such party did not ask to be relieved therefrom, and the default has not been set aside, such de-

Bell *et al.* *v.* Corbin *et al.*

fendant can not move for a new trial nor join in an appeal from the proceedings of the trial court.

SAME.—*Defendant.—Supernumerary Party.*—Where a party defendant stands in the position of purchaser *pendente lite*, being the purchaser of a certificate of sale of the land in controversy, having no interest in the disposition of the surplus in controversy, such party is a supernumerary one, against whom a judgment can not be rendered.

From the Marshall Circuit Court.

*I. Conner*, for appellants.

*J. D. McLaren* and *H. Corbin*, for appellees.

DAILEY, J.—On June 24th, 1871, one Michael W. Downey was the owner in fee-simple of the land described in the pleadings, and on that day he, with his wife joining him, executed to the State of Indiana a mortgage for the use and benefit of the common school fund of said State, to secure a loan from said fund, of $1,000, bearing eight per cent. interest per annum, payable in advance; and on the 28th day of August, 1875, said Downey and wife conveyed said land to one Susan Ely, and put her in possession thereof, subject to said school fund mortgage, which was then unpaid; and on the 22d· day of April, 1876, said Susan Ely and her husband conveyed said land to one Isaac E. Bell, except forty acres out of the southeast corner thereof, subject to said mortgage, which was still unpaid, and he was put in possession thereof; the excepted forty acres having been conveyed before that to one Daniel C. Shively, who was put in possession of the same, and who conveyed it to the appellee Corbin, after recovering possession of it from one William Sear.

The school fund mortgage still being unpaid, and interest having accumulated thereon to a large amount, Alexander C. Thompson, then county auditor of Marshall county, after advertising said land for sale at public auction, as required by law, did, on January 13th,

1879, offer said land in the manner required by law, for sale upon said mortgage, and no person bidding on the same, or any part thereof, he, as such county auditor, bid in said lands for the State of Indiana, for the use of the common school fund, for the amount of principal, interest, costs, and damages due at that time, to wit, $1,312.33, as provided in section 4393, R. S. 1881. At the time said land was bid in by said auditor, the appellant Bell was in possession, as owner, of all of said land, except the forty acres, of which the said Shively was then in possession as owner.    Afterwards, on the 28th day of March, 1881, Keim K. Brook, then auditor of said county, and the immediate successor in office of said Thompson, acting upon the theory that the bidding in of said land, on account of the common school fund, by his predecessor in office, the said Thompson, was void, advertised and sold the said land as upon said school fund mortgage, to one William Sear at and for $1,461.50 cash in hand, that being the full amount of principal, interest, costs, and penalty then due upon said note and mortgage; and he, as such auditor, executed, recorded, and delivered a deed for said land to said Sear, as purchaser.

Bell and Shively were ejected from said lands, and Sear was put in possession thereof under his purchase and deed from said Brook as county auditor.    Afterwards, on July 29th, 1894, appellant Bell, with his wife joining, executed a power of attorney, and duly acknowledged the execution thereof, to said Thompson, authorizing him *inter alia* to sue for the possession of and to sell and convey their interest in said land, in their names, to whomsoever he pleased at such price as he saw proper to take, which was duly recorded in the recorder's office of Marshall county, on September 12th, 1884.    Concurrently with the execution of said power

of attorney by said Bell and wife said Thompson exe-
cuted to said Bell his written contract of purchase of the
interest of said Bell and wife in said land for $500, to be
paid as soon as the title to the same should be perfected
in Bell, at which time Bell and wife were to execute a
deed to Thompson for said land, in the event of a recov-
ery in the suit brought by Thompson under the power
of attorney. This contract was delivered to, and re-
tained by, Bell, at the same time he executed and deliv-
ered the power of attorney to Thompson. About the
same time said Daniel C. Shively executed to said Thomp-
son a power of attorney, authorizing him to sue for the
possession and to sell his southeast forty acres, from
which he had been ejected by said Sear wrongfully, and
suit was brought in Shively's name by Thompson, un-
der the power of attorney, against Sear, and judgment
for possession and for damages was rendered in said suit
in favor of Shively and against Sear, in the same action.
Before the rendition of said judgment, the cause was con-
solidated by the court for trial, with the case brought by
Thompson in Bell's name against Sear, and after such
recovery and possession obtained by Shively, he sold and
conveyed his said forty acres to the appellee Corbin.
Shively is making no further claim in this action, and
we need make no mention of him hereafter or of said
forty acre tract, in which Bell never had any interest.

On the 13th day of October, 1884, Thompson, in pur-
suance of said power of attorney from the appellant Bell,
caused an action to be brought in the Marshall Circuit
Court, in the name of appellant, Isaac E. Bell, as plain-
tiff, and against said William Sear, to set aside the sale
of said land to said Sear by said Brook, as county auditor,
and to recover judgment for the possession of said land
and damages for being kept out of the possession, and
such proceedings were had in said court in said cause,

Bell *et al.* *v.* Corbin *et al.*

that on November 9th, 1885, a judgment was rendered setting aside said Auditor Brook's sale of said land to said Sear, and in favor of said Bell for possession of the real estate embraced in said mortgage, except forty acres adjudged to said Shively and for fifty dollars damages, and a writ of possession was awarded in said judgment.

Appellant Bell was put in possession of said land in pursuance of said judgment, and said Sear was subrogated to the rights of the State, as mortgagee, to the extent of $1,461.55, the amount of his bid made March 28th, 1881, with interest thereon at eight per cent. and decreed a lien on the land for the payment thereof. It was also ordered that the auditor should sell said lands, pay Sear his money out of the proceeds, and that the surplus should be paid $\frac{152}{192}$ to Bell, and $\frac{40}{192}$ to Shively.

No appeal was ever taken from this order.

On July 22, 1886, said Thompson—by virtue of the power of attorney and the authority given to and vested in him by the same, theretofore executed by said Isaac E. Bell and Harriet E. Bell, his wife, which the court found to be unrevoked—sold and conveyed said land to appellee Corbin for the consideration of $650, and said Corbin caused his said deed to be duly recorded in the recorder's office of said county, on September 25, 1886, when Morgan Johnson, then county auditor of said county, having before that date had said land, including said southeast forty acres, duly appraised as required by section 4393, R. S. 1881, *supra*, at $3,840, sold all of said land to appellant Isaac E. Bell, on five years' time. at seven per cent. interest, at and for said sum of $3,840, the full appraised value thereof, being $1,927.15 in excess of the school fund loan, interest, and costs, and issued, recorded, and delivered to him his certificate of sale, as such county

auditor, and paid said auditor one years' interest, at seven per cent., on said sum, in advance, as required by law, and then took possession of all of said land including said southeast forty acres.

This was all he ever paid on said purchase. Of the one year's interest paid by Bell on the purchase-money, at the time the auditor delivered the certificate of sale to him, the auditor, under the order of the circuit court made in said consolidated suits of Bell and Shively against Sear, paid to Sear the interest due him on the school fund mortgage to which he had been subrogated by the decree of the court, and the remainder of it was claimed by Corbin, as assignee of Bell, under the deed executed to him by Thompson, as agent and attorney in fact of Bell and wife, and also by Bell, and the auditor refused to pay it to either of them. Thereupon Corbin commenced *mandamus* proceedings against the then county auditor, Charles H. Lehr, in the Marshall Circuit Court, in which action the remainder of the interest was adjudicated to Corbin, and paid to him by said auditor, by his warrant on the treasurer.

In January, 1887, appellee Corbin instituted a suit in the Marshall Circuit Court against William H. Molenhour, who was then in the possession of said land, to restrain him from cutting down and removing the timber trees from said premises, but before the cause came on for trial, a compromise was effected, by which Henry W. Hartman was agreed upon as trustee, who was to receive all money arising from the sale of the timber taken from the tract and pay the same to Sear on his lien, as secured to him in the order setting aside the sale to him of said real estate. Said Hartman, while so acting, received $400 from timber cut and removed, and, in the fall of 1887, bought $500 worth of timber from Molenhour. The $500 was to be paid to Sear and applied

on his lien, together with seven per cent. interest, on October 16, 1891, and all of said moneys have been paid out, except $233.30.

Pending the time that Hartman was acting under his said trust, it became known that Bell had assigned his certificate to Margaret E. Molenhour soon after his purchase, but this fact did not appear of record in the auditor's office.

On January 31, 1888, Corbin brought this suit to require an accounting and marshaling of assets to be applied upon the school fund lien due Sear. Pending this suit, Bell, on March 2, 1888, brought an action asking that the deed of conveyance from said Thompson to the appellee Corbin for said realty be set aside and adjudged to be of no effect to convey to said Corbin any interest or share in the surplus derived from the sale of the premises on the school fund mortgage; that said power of attorney be revoked, and that the ownership of $\frac{152}{192}$ parts of said surplus be decreed in the plaintiff; that said Thompson and Corbin be perpetually enjoined from receiving the same or any part of the annual interest thereon; that if it appear that said Corbin has collected and received the $107.39 of interest paid in by plaintiff on October 16, 1886, that plaintiff have judgment therefor, with interest, against said Corbin; that the auditor of Marshall county be ordered to pay the plaintiff said interest, or draw a warrant therefor on the county treasurer; that he be enjoined from paying any portion of said interest to any one but the plaintiff, and that upon final payment of said purchase-money, such auditor or his successors in office be directed to pay plaintiff such share of the surplus, and that Margaret E. Molenhour and William Sear appear and assert their interests.

Thompson filed a separate answer to Bell's complaint, in general denial. Corbin answered in three paragraphs,

first, in denial, and the second and third were special answers.    He also filed a cross-complaint; and, after the issues were formed, the two actions were consolidated and tried by the court, without the intervention of a jury.

Pending said causes so joined, Margaret E. Molenhour sold and assigned the certificate she held to said lands to Levi H. Eaton, on May 22, 1888, who, on the 17th day of January, 1889, sold and assigned said certificate to Joseph E. Faulkner, who, on December 16, 1889, reassigned the same to said Eaton.    Bell was in possession of said land until he assigned the certificate to Molenhour; the latter was in possession until September, 1888; Faulkner was in possession to February 1, 1890.    Eaton, at the time of the trial, was the holder of said certificate. It appears, that said Margaret was the wife of William H. Molenhour; that said Corbin bought the land with full knowledge that Bell had a claim on it for $500, which Corbin agreed to pay, and the same has never been paid.

The court found the facts specially, and stated as its conclusions of law thereon:

"1st. That the plaintiff Bell take nothing by this suit.

"2d. That the cross-complainant Horace Corbin is entitled to the surplus arising from the sale of lands by the auditor and the annual interest thereon since October 16, 1886.

"3d. That the title thereto be forever quieted in him, and the plaintiff Bell and all others claiming by, through, or under him be forever enjoined from setting up any claim or title to said surplus.

"4th. That the auditor of Marshall county, Indiana, shall collect and pay said surplus and annual interest to said Corbin.

"5th. That said Corbin is entitled to the money paid into court by said Capron.

"6th. That the defendant Hartman pay the auditor of Marshall county, on October 16, 1891, the sum of $233.30, and the interest at seven per cent., from December 1, 1887; and the said auditor is directed to apply the same on the claim of Sear.

"7th. That said Corbin recover the costs of this suit, against said Isaac Bell and Margaret Molenhour."

Judgment was rendered for appellee Corbin, and Isaac E. Bell, Henry W. Hartman, William H. Molenhour, Margaret E. Molenhour and Levi H. Eaton prosecute this appeal.

They severally assign as error:

1st. That the court erred in its conclusions of law.

2d. That the court erred in overruling the motion for a new trial.

3d. The court erred in overruling the demurrers to the second and third paragraphs of Horace Corbin's answers to Isaac E. Bell's complaint, and in each of said rulings.

4th. The court erred in overruling the demurrer to Horace Corbin's cross-complaint.

While myriads of questions have been suggested for our consideration, by able and ingenious counsel, yet, when stripped of all extraneous matter, the real inquiry is as to the appellee Corbin's right to the surplus of the purchase money due upon the auditor's certificate of sale, after paying the amount due on the school fund mortgage

In other words, the contention here is, Who is the real party entitled to the balance of the purchase money after the amount due on said mortgage is satisfied? Is it Corbin or Bell? So far as the record discloses, no other person is making any claim to it. That one or the other

of these two parties occupies the vantage ground as to the greater part of this fund, there is no doubt.

Appellants, counsel concedes that Corbin is rightfully entitled to $\frac{40}{192}$ parts of it; but appellee contends, under the facts, that he is entitled to all of the residue.

Section 4394, R. S. 1881, provides that if a sum is realized, upon a sale of such land, "which is more than sufficient to pay the principal, interest, damages, and costs, the overplus shall be paid to the original mortgagor, his heirs or assigns, when collected.

The trial court found and stated its conclusions of law, that the appellee, Corbin, is the assignee of the original mortgagor to whom the overplus should be paid.

Appellant Bell questions the correctness of the court's conclusions of law upon the facts found by excepting thereto, and thereby admits that the facts are fully and correctly found.    Elliott's App. Proced., page 748, note 6.

It appears to us that the court below committed no error in overruling the appellant Bell's exceptions to the conclusions of law upon the facts found.    The court could not have logically and legally stated any other conclusions than it did, after finding that Bell and wife had duly executed a power of attorney, coupled with an interest to Thompson empowering him to sell and convey their interest in the land, which was only an equity of redemption, and that Thompson did sell and convey the interest of Bell and wife in the land to Corbin for a valuable consideration, before Bell made any attempt to revoke the power of attorney.

By its express terms, it is declared to be irrevocable; but, conceding that the power was revocable, Bell, as an assignee of Downey, the original mortgagor, was the owner of the equity in, and entitled to the possession of the land when he and his wife executed the power of at-

torney to Thompson, and when Thompson, at the same
time, executed his written contract of purchase of the
land; and the subsequent conveyance by the attorney in
fact to Corbin, before the revocation of such power, com-
pletely and absolutely divested Bell and wife of what-
ever interest they . had in the land or its proceeds,
upon a sale under the Downey mortgage, except such, if
any, as may have been reserved in their contract with
Thompson, and they took, in lieu of such interest, the
promise of Thompson to pay Bell $500 when it was real-
ized out of the land.   Bell has a valid claim against
Corbin for the $500 which Thompson agreed to pay, for
the court found that it was to be a lien on the land, and
that Corbin purchased with a knowledge of the fact, and
that it was unpaid; but that will not aid Bell here in his
contention for the surplus, his proceeding here is for a
different relief and upon a different and inconsistent
theory.   He is bound in this court by the same theory
he adopted in the court below.

The doctrine that the theory acted upon in the lower
court must be adhered to in the higher is sanctioned and
finds expression in various forms, which signify essen-
tially the same thing, such as "new issues can not be
made on appeal," "there can be no change of base on
appeal," and "the matter was not contested below and it
can not be contested above."   Elliott's App. Proced.,
section 490, and notes.

In this case Bell sought, and still seeks, to repudiate
his transaction with Thompson, while his claim for the
$500, agreed upon, would necessarily be an affirmance
of his transaction with Thompson.

The court found that on July 22, 1886, Thompson
sold and conveyed the land to Corbin under the power
of attorney, which had been duly recorded, and that on
August 14, 1886, Bell, by his attorney Capron, handed

him a notice in writing of the revocation of the power. There is neither evidence nor finding in the record, that Corbin ever had any notice of Bell's revocation or attempted revocation of the power of attorney, and it was not operative as to Corbin.   *Ulrich* v. *McCormick,* 66 Ind. 243; *Pursley* v. *Morrison,* 7 Ind. 356; 2 Bouv. L. D. (14th ed.), under title "Revocation," clause 5, pages 477, 478.

Counsel for appellant attacks the first and second conclusions of law with much vigor, and suggests that "there is no finding that appellee was the owner of the equity of redemption."

The facts found were that the title of Bell (which was but an equity) had passed to Corbin before a sale of the land to the auditor.   There was no surplus until after the sale by the auditor and the holder of the equity became by the operation of the law the owner of the surplus; so when the court, by its first conclusion, said "that Bell take nothing by this action," it said in legal effect that he had no equity of redemption in the land when sold by the auditor, and could, therefore, have no interest in the excess after the payment of the mortgage, and, for the same reason, that Corbin was entitled to the surplus, as a legal conclusion, because he owned the equity of redemption when the land was sold by the auditor.

Appellant argues that the quieting of title in the State and determining the proportion of the surplus which should be paid to Bell by the auditor operated in annulling the second clause of the power of attorney, which authorized the sale which to us appears to be erroneous. The court, which set aside the sale of Auditor Brook at the suit of Bell and Shively, determined their respective interests in the land, only subject to the school fund mort-

gage. It also put them in possession of the land, and gave them judgment for being kept out of possession.

It will not do to say that when Bell was restored to possession of the land by the act of Thompson, under his power of attorney, with the power of attorney and contract still in force, that he shall be permitted to retain the benefits resulting from the efforts of Thompson, and then deprive him of all rights under his contract.

Appellant Bell's second cause for a new trial, "That the findings are contrary to the evidence," is urged upon the ground that there was evidence upon a material issue upon which there was no finding, in this: that Bell, in his complaint, alleged that the power of attorney to Thompson was revoked by mutual agreement. This being the case, the onus was on appellant, and there being no finding of such fact by the court, the presumption is that the court found against him on that issue. *Graham* v. *State, ex rel.*, 66 Ind. 386; *Martin* v. *Cauble*, 72 Ind. 67; *Vannoy* v. *Duprez*, 72 Ind. 26.

The facts which the court did find preclude the theory that such allegation, as claimed, was proven; the court is not required to find that any certain allegation of a pleading was not established, but to find the facts proven and not the evidence of the facts.

There is in the record conflicting testimony as to any revocation of the power of attorney by appellant Bell, and it is a question, under the evidence, if Bell even regarded such revocation as having been made; for he made out a written revocation which bore date of July 24, 1886, two days after the execution of the deed by Thompson to Corbin, and this was served August 14, 1886; hence the evidence justified a failure to find that the power was revoked when Corbin bought.

Appellant does not state the facts correctly when he suggests that "the best Thompson could do for Bell's in-

terest of $1,927.15 was to get a promise of $650, which was never paid.''

The record shows that on July 22, 1886, when Bell and wife sold and conveyed through Thompson their equity to the land for $650, there was no interest of the value of $1,927.15 in existence for any person; that interest was created October 16th, 1886, when the county auditor sold the legal title for an amount that created the excess.

It seems to us that the trial court reached a correct result between Bell and Corbin.

Appellant, William H. Molenhour, was duly called and defaulted, and it is no where shown that the default was vacated or set aside. No judgment or order of any kind was rendered or made against him, and he has no interest whatever in the subject-matter of the contention.

It was discovered during the trial, that William H. Molenhour was acting only as agent for his wife, Margaret, and she was substituted as a defendant in place of her husband, but no change was made in the answers which appear to have been theretofore filed by William. In such case his answers would stand as Margaret's without any change of names or refiling.

When Corbin filed his cross-complaint, Margaret appeared thereto; and, when the causes were consolidated, she filed an answer in denial. This brought her within the jurisdiction of the court. It is shown by the transcript that a judgment was rendered against her for costs only. She owned the auditor's certificate of sale at the commencement of the litigation, and pending it transferred the same to appellant Eaton, after which she had no further interest in the certificate or the land described in it, and made no claim upon the surplus arising from the sale of the land by the county auditor; but she saw proper to file her answer in denial to Corbin's

cross-complaint, after she had transferred the certificate to Eaton, instead of disclaiming all interest in the subject in controversy, which would have entitled her to a judgment in her favor for costs, and under this condition of the record the judgment for costs was properly rendered against her. Indeed, the court could not have done otherwise on the issue made by her answer in denial, for the reason that she had no right or interest in the surplus of the purchase-money arising from such sale after the payment of the mortgage.

Appellant Hartman is a party to the record but not to the judgment or decree appealed from; he was merely ordered to pay a sum of money found by the trial court, on his own evidence, to be in his hands as trustee, which, with the interest thereon, he was ordered by the court to pay to the county auditor on the purchase-money due on the auditor's certificate of the sale of the land, and he complied with the order by paying the money and the interest thereon to the county auditor. No judgment was rendered against him for the money, and its payment could not have been enforced by execution against his property,

It is also shown in the record, that he was duly called and defaulted, and it is no where shown that he ever asked the court to relieve him of said default, or that it was ever set aside. The record being in that condition, he was precluded by his default from moving for a new trial; having had no contention in the first trial, he had no right to except to the conclusions of law and join in the appeal.

The action as to him and the appellee Capron, was for the purpose only of discovering the money in their hands and each accounted for and paid over all that he had belonging to the trust.

There is no error of which Hartman should complain.

Appellant Eaton, we think, is a supernumerary party. He purchased *pendente lite* the auditor's certificate of sale, and can have no possible interest in the auditor's disposition of the purchase-money. As the real owner of the certificate of sale, his only duty is to pay the annual interest in advance, and the principal at maturity, to the county auditor, and receive a deed from him for the land. No judgment was asked for or rendered against him or the land described in the auditor's certificate of sale, which it was found that he owned at the time of the trial. As stated, it is the overplus that is in controversy in this suit, to which Eaton makes no claim.

As the owner of the auditor's certificate of sale, by purchase from, or assignment by the original purchaser, he is the debtor of the State, and is required to pay the purchase-money from which the surplus arises.

The sufficiency of some of the paragraphs of Corbin's pleadings has been challenged, but we think them sufficient to resist a demurrer.

The judgment is affirmed.

