WM. MULVANEY, Appellee, v. N. T. BURROUGHS, Appellant.

**Appeal:** MATTERS NOT ARGUED: REVIEW. Where exception to a ruling is not argued the appellate court will not search and analyze the record in order to discover error.

**Slander and libel:** JUSTIFICATION: PLEADING. A plea in justification of a slander must be as broad as the charge made: So that a plea which fails to admit the use of the words charged, but alleges the use of other and different words and justification for their use, is insufficient. The plea of justification must also allege the truth of the charge rather than a belief in its truth.

**Same:** PLEADINGS. The striking of one division pleading justification is harmless error where another like plea is allowed to stand.

**Trial:** SPECIAL INTERROGATORIES: FAILURE TO ANSWER: PROCEDURE. The objection that interrogatories submitted by the court on its own motion are returned unanswered should be raised by a request that the jury be required to answer them. It is too late to raise the question in a motion for a new trial.

**Same.** A general verdict for plaintiff under proper instruction as to the form of verdict in case of a finding for either of the parties, and the answer to a special interrogatory stating the

allowance on one of plaintiff's causes of action, was a sufficient answer to an interrogatory left unanswered, as to what if any thing was allowed defendant on his counterclaim.

**Same.** As a general rule failure of the jury to answer a special interrogatory upon a material fact is to be regarded as a finding against the party having the burden of proof on that issue.

**New trial:** NEWLY DISCOVERED EVIDENCE. A party is not entitled to a new trial on the ground of newly discovered evidence where he had talked with the witness prior to the trial and knew, or should have known, that his testimony might become material, but made no effort to have him present. And if surprised by the other evidence developed on the trial, rendering material that claimed as newly discovered, he should then have moved a continuance that he might produce such testimony.

*Appeal from Cherokee District Court.*—Hon. F. R. Gaynor, Judge.

Thursday, October 19, 1911.

Action for libel and slander. The first count of the petition charged libel and the second slander. Various defenses were interposed by defendant, and upon trial to a jury a verdict was returned for defendant on the first count of the petition, and for the plaintiff on the second. The damages were fixed at $900, and from a judgment for that amount defendant appeals. *Affirmed.*

*McCulla & McCulla* and *J. M. Parsons,* for appellant.

*J. U. Sammis* and *F. E. Gill,* for appellee.

Deemer, J.—As the jury found for defendant on the charge of libel, we need only consider the case insofar as the alleged slander is concerned. The charge is that defendant said in the presence and hearing of the members of the city council of Cherokee, Iowa, the mayor, the city clerk, the marshal, and many citizens of the city;

That he, Burroughs, had discovered that the case between himself and the city of Cherokee, Iowa, was reversed in the Supreme Court, because of deception and fraud practiced on said court and because of forgery, that he had discovered that 'Exhibit A,' shown in appellant's abstract of the record, he holding the printed abstract in his hand, was and is a forgery; that the name of 'W. C. Gray' on said exhibit was forged, and that 'I have traced the forgery to you,' pointing his finger at this plaintiff, and that at that time the said defendant further said, in the presence of the said mayor, city clerk, marshal, and members of the city council and other citizens, that this plaintiff was guilty of the crime of forgery in the making of said abstract of record, upon which said cause was submitted to the Supreme Court, and that this plaintiff had made and manufactured the Exhibit A shown in said abstract, and that before the photograph was taken, which was shown in said abstract, that this plaintiff had forged the name of 'W. C. Gray,' official shorthand reporter, to the same, and that he was absolutely certain of this fact; that at said time and place the said defendant repeated several times the charge that this plaintiff was guilty of the crime of forgery, and that he would settle it with him, meaning that he would settle it with this plaintiff; that on different occasions during the progress of said meeting the said defendant broke out and made and repeated the same charges as above set out against this plaintiff.

The defenses pleaded to this count were a general denial, a plea of justification and a plea in mitigation. One plea in justification was stricken on motion, as well as another defense pleaded in what is known as the "sixth division" of the answer.  Defendant also pleaded a counterclaim in two counts.  One of these was not submitted to the jury, and this is made one of the grounds for reversal.  The main propositions relied upon are that the court erred in not requiring the jury to answer certain special interrogatories submitted to them, erred in refusing to submit the second count of defendant's counterclaim, and erred in overruling defendant's motion for a new trial based upon newly discovered evidence.

I. In his brief of points defendant also says that the court erred in striking out certain defenses pleaded by him. This proposition is not argued for the reason that

*1. Appeal: matters not argued: review.* counsel thought it too plain for argument, or because he had no faith in it. Whatever the motive, we are left without argument, and are asked to wade through the abstract and analyze pleadings and motions covering nearly twenty printed pages in an effort to discover error. This we must decline to do without argument from counsel. However, a cursory examination of the record discloses no error.

Defendant's plea of justification was not sufficient for the reason that he did not admit the speaking of the words charged. On the contrary, he stated in this plea that he

*2. Slander and libel: justification: pleading.* used other and different words, and that he was justified in what he said. It is, of course, elementary that the plea of justification must be as broad as the charge. *Forshee v. Abrams,* 2 Iowa, 571; *Bearsley v. Bridgman,* 17 Iowa, 290; *Hollenbeck v. Ristine,* 105 Iowa, 488; *Morse v. Times Co.,* 124 Iowa, 707.

Again, the plea appears to be insufficient because it averred defendant's belief in the truth of the charge rather than the truth in fact. *Fountain v. West,* 23 Iowa, 9.

These observations apply to the other divisions of the answer which were stricken, save that one division of the answer pleading justification was allowed to stand, so that,

*3. Same: pleadings.* even if there be error in striking out one of the pleas of justification, it was without prejudice. It is suggested, but not argued, that the verdict has no support in the testimony. A casual reading of the record indicates the contrary.

II. The second count of defendant's counterclaim was for damages due to plaintiff's alleged use of a spurious map in this court, whereby he secured a reversal of the judgment in the case of *Burroughs v. City of Cherokee,*

134 Iowa, 439, whereas, if the true plat had been used, no such result would have followed. A reading of the record clearly shows that there was not sufficient testimony upon which to submit this claim. We shall not set out the evidence upon which we arrive at this conclusion. It is enough to say that defendant failed to show that the so-called spurious plat had controlling influence upon the decision rendered by this court. The opinion filed in the case which was introduced in evidence upon the trial of this action clearly shows that this court had a true copy of the correct plat before it, and based its decision in part at least upon that plat. The opinion shows that, even had the alleged spurious plat been eliminated, the result would have been the same.

III. The trial court submitted the following interrogatories to the jury, which were answered in the manner indicated:

Int. 1. Do you allow the plaintiff anything on the first count of his petition, wherein he seeks to recover damages for the publication of the article complained of in the Semi-Weekly Democrat? Ans. No.

Int. 2. If you answer the above interrogatory, 'Yes,' how much do you allow him? Ans. ——.

(3) Do you allow the plaintiff anything on the second count of his petition wherein he claims at the city council meeting the defendant charged him with the crime of forgery? Ans. Yes.

(4) If you answer the above interrogatory, 'Yes,' how much did you allow him? Ans. $900.

Int. 5. Do you find for the defendant Burroughs, on his counterclaim, wherein he says that the plaintiff, Mulvaney, charged him with the crime of perjury at the meeting of the city council? Ans. ——.

Int. 6. If you answer the above interrogatory, 'Yes,' how much do you allow him? Ans. ——.

Complaint is made of the failure of the court to require answers to interrogatories 2, 5, and 6. Manifestly,

in view of the answer to No. 1, there was no necessity for

an answer to No. 2. Unless there was error

4. TRIAL: special interrogatories: failure to answer: procedure.

in failing to require an answer to No. 5, there was no error in not requiring answer to No. 6. Was there any error in the court's failure to require an answer to No. 5? We think not. The interrogatories were submitted on the court's own motion, and, when the verdict was returned, defendant's counsel made no request that the jury be required to answer this particular interrogatory. It is true that in the motion for a new trial filed some time after the return of the verdict defendant made the point that the trial court erred in not requiring answers to interrogatories 5 and 6. But we are constrained to hold this was too late. *Mack v. Leedle,* 78 Iowa, 164; *Mayo v. Halley,* 124 Iowa, 675.

Moreover, the trial court gave the jury the following instructions:

Par. 23: The court submits to you two forms of verdict. If you find for the plaintiff on his several causes of action, as hereinbefore set out, and do not find anything for the defendant on his counterclaim, then you should insert in verdict No. 1 in favor of the plaintiff the amount so found. If you find for the defendant on his counterclaim, and do not find anything for the plaintiff upon his causes of action, then you should insert in verdict No. 2 the amount so found in favor of the defendant. If you find for the plaintiff on his causes of action, or either of them, and also find for the defendant on his counterclaim, if the amount found in favor of the plaintiff exceeds the amount found in favor of the defendant, return a verdict for the plaintiff for the difference, inserting the same in verdict No. 1. If you find for the defendant on his counterclaim, and for the plaintiff upon his causes of action, or either of them, and the amount found in favor of the defendant exceeds the amount found in favor of the plaintiff, then return a verdict for the defendant for the difference, and insert the same in form of verdict No. 2. If you do not find for either party upon their several claims, or if the amount found in favor of the plaintiff equals

the amount found in favor of the defendant, then return a verdict for the defendant without assessing any amount and sign No. 2, and the verdict agreed upon, have your foreman sign and return into court therewith, the foreman to be selected by you after you retire to deliberate upon a verdict. The court also submits to you several special interrogatories hereinafter set out, which you will answer, have your foreman sign, and return into court with your verdict.

The jury used form No. 1 for its general verdict, being a verdict for plaintiff and assessed the amount of his recovery at $900. This, in view of the instruction just quoted, was clearly an answer to the fifth and sixth interrogatories, and the court did not err in failing to require specific answers to these interrogatories. Taking the instruction, the general verdict, and the answers to the special interrogatories together, there is no doubt whatever as to the jury's finding. It disallowed the defendant's counterclaim.

5. SAME.

The general rule is that, where a jury fails to answer a special interrogatory upon a material fact, it is to be taken as a finding against the party having the burden of proving such fact. *Bell v. Corbin,* 136 Ind. 269 (36 N. E. 23); *Belshaw v. Chitwood,* 141 Ind. 377 (40 N. E. 908). See, as sustaining our views on this proposition, *National Co. v. Novak,* 95 Iowa, 596; *Roberts v. Roberts,* 91 Iowa, 228; *Dively v. Cedar Falls,* 27 Iowa, 227; *Grannis v. Railway Co.,* 81 Iowa, 444; *Andrews v. Mason City, etc., Ry. Co.,* 77 Iowa, 669; *Seekel v. Norman,* 78 Iowa, 254; *Huss v. Railroad,* 113 Iowa, 343; *Connell v. Railroad,* 131 Iowa, 622.

6. SAME.

IV. One of the grounds of the motion for a new trial which was made by an amendment some time after the original motion was filed was newly discovered evidence. This evidence is presented in the form of an affidavit by one Pingrey, which, so far as material, is as follows:

I am personally acquainted with one William Mulvaney,

of Cherokee, Iowa, and have been acquainted with him for a number of years. I know of the trial of an action in the district court of Cherokee county, Iowa, wherein the question of the existence of certain streets in a plat of an addition to the town of New Cherokee, Iowa, known as Burroughs Magnetic Spring addition to New Cherokee, Iowa, was involved, in which action the said N. T. Burroughs was plaintiff, and the city of Cherokee, Iowa, *et al.,* were defendants. I also know of said action having been appealed to the Supreme Court of Iowa. William Mulvaney was one of the attorneys for the defendants, who was engaged in said trial in both the said district court and upon the appeal of said cause. Upon the appeal of said cause by the city of Cherokee, Iowa, the said William Mulvaney employed me to make or superintend the making of photographic copies of certain exhibits which constituted a part of the evidence in said cause, and that I did look after the making of said photographic copies of said exhibits, which consisted of certain maps and plats which had been offered in evidence in said cause on the trial. I attended to the getting of the photographic copies of said maps and plats for said Mulvaney, and returned to him all the said photographic copies after the same had been prepared; said photographic copies being prepared for the purpose of being inserted in and used as a part of the printed abstract in said cause for trial on appeal in the Supreme Court of Iowa. I obtained all the maps and plats of which I so made photographic copies in said case from the said William Mulvaney, and made no photographic copy of any map or plat in said matter which was not furnished to me by the said William Mulvaney. I did not get any of said plats or maps of which said copies were so made from any other source than said William Mulvaney.

Upon this point plaintiff gave the following testimony on the trial below:

I say I am responsible for my abstract, and I understand the fact that, if I filed a spurious map entirely, that Mr. Burroughs isn't hurt at all, because his attorney can deny the correctness of our abstract. That abstract was practically prepared by me. I am responsible for it.

. . . At the conclusion of the trial of the case of Burroughs versus the city in the district court, Mr. Herrick took the exhibits. All I know about reducing them or photographing them was that, when the shorthand reporter finished the transcript in typewriting, he wrote on different blank pages which exhibit went into this place, and when I came to make the abstract I found Herrick had the exhibits, and I sent Pingrey after them to put them in proper size to correspond with the page of what the rules of the Supreme Court require for the size of a page in an abstract. Pingrey did not get them from him. There were one or two exhibits in the city clerk's office, but neither of us had them in our possession. Plaintiff's Exhibit A and all of plaintiff's exhibits were retained by Mr. Herrick. I employed Pingrey to make blueprints, but when he brought them to me he had photographs. He said they were easier to make. Pingrey prepared Exhibit A.

It must be conceded that Pingrey's affidavit is in contradiction of some of this testimony; but defendant while on the witness stand gave this testimony:

This photographic map has the initials on the top of Pingrey. I know Pingrey. He made the genuine Exhibit A that was offered on the trial. His initials appear to be in small letters, 'J. S. P.,' on the photograph. I asked him how that photograph was made. This was before the council meeting. He said he got the plat from Mr. Molyneux. The plat that was photographed. He got it of Molyneux. I think it was on the day the council met, as I recollect. I showed Pingrey what I regarded as the substitution in Herrick's office. . . . I had asked Mr. Molyneux and Mr. Pingrey, and I knew of nowhere else it could rest other than Mr. Mulvaney. . . . I know J. S. Pingrey. He made the original Exhibit A that was offered on the trial in the district court. His initials appear, 'J. S. P.,' on the photograph. I had a talk with Pingrey about how this photograph was made. This conversation was before the council meeting, and from what original it was made. He said he got the plat from Molyneux. The plat that was photographed he got of Molyneux. That is what

Pingrey told me. I think that he told me this on the same day of the council meeting. I showed Pingrey in Herrick's office what I regarded as the substitution and it was at that time that I asked him where he got the original from which he made the photograph. I at that time believed what Pingrey and Molyneux told me.

From this it appears that defendant had talked with Pingrey long before the trial and knew of his connection with the plats. He also gave his version of the matter to the jury. He knew, or should have known, that Pingrey's testimony might become material, but he did not have him subpoenaed or make any effort to have him present. His excuse and the reason for not having him present is in the following language: "That the reason why said testimony was not produced upon the trial of said cause was because the defendant did not at said time know that said Pingrey would testify as set forth in his said affidavit, nor did he at said time know or expect that the said Mulvaney would testify as set forth in his testimony in said cause, and had no reason to expect that the said Mulvaney would so testify in said cause, and that he was taken by surprise by said testimony." Manifestly this excuse is insufficient. If Mulvaney's testimony was a surprise to the defendant, he, knowing of Pingrey's version of the matter and of his whereabouts, should have immediately moved for a postponement or continuance in order that he might procure the witness' testimony. This he did not do, nor did he attempt to secure the attendance of Pingrey or his testimony in any form until after the verdict was returned against him. Under numerous decisions his motion for new trial on the ground of newly discovered evidence was properly overruled. *State v. Morgan,* 80 Iowa, 413; *Dunlavey v. Watson,* 38 Iowa, 398; *Hopper v. Moore,* 42 Iowa, 563; *Mehan v. R. R.,* 55 Iowa, 305; *First Bank v. Ins. Co.,* 40 Iowa, 572. Moreover, no such

7. New trial: newly discovered evidence.

abuse of the discretion vested in the trial court in such matters is shown as would justify a reversal.´ *Trimble v. Tantlinger,* 104 Iowa, 665; *Bullard·v. Bullard,* 112 Iowa, 423.

No prejudicial error appears, and the judgment must be, and it is, *affirmed.*